**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MEANITH HUON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 C 7877 |
| | ) | |
| JOHNSON AND BELL, LTD., WILLIAM | ) | |
| V. JOHNSON, WILLIAM G. BEATTY, | ) | |
| and SCOTT W. HOYNE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On June 4, 2012, pro se Plaintiff Meanith Huon, an attorney who has been licensed in the State of Illinois since 1996,[1] filed the present First Amended Complaint alleging that his former employer, the law firm of Johnson & Bell, Ltd. ("Johnson & Bell"), intentionally discriminated against him on the basis of his race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981. In his First Amended Complaint, Huon also alleges a state law claim of intentional interference with prospective economic advantage against the individual Defendants William Johnson, William Beatty, and Scott Hoyne. Before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) based on the doctrine of res judicata. For the following reasons, the Court grants Defendants' Rule 12(c) motion and dismisses this lawsuit in its

---

[1] Although Plaintiff appears pro se, because he has been a licensed attorney in Illinois for approximately seventeen years, the Court does not liberally construe his allegations as it would a pro se litigant's filings. *See Lockhart v. Sullivan*, 925 F.2d 214, 216 n.1 (7th Cir. 1991) ("While we treat pro se litigants gently, a pro se attorney is not entitled to special treatment."); *see also Matter of Kindhart*, 160 F.3d 1176, 1177 (7th Cir. 1998).

entirety.[2]

## LEGAL STANDARD

Rule 12(c) motions for judgment on the pleadings differ from Rule 12(b) motions to dismiss because they are brought after the pleadings are closed. *See* Fed.R.Civ.P. 12(c); *Buchanan–Moore v. County of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009). Despite the difference in timing, the Court reviews Rule 12(c) motions under the same standards that apply to motions to dismiss under Rule 12(b)(6). *See Richards v. Mitcheff,* 696 F.3d 635, 637-38 (7th Cir. 2012); *Buchanan–Moore,* 570 F.3d at 827. Under Rule 12(c), the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Fail-Safe, LLC v. A.O. Smith Corp.,* 674 F.3d 889, 892 (7th Cir. 2012). To avoid dismissal, a plaintiff must plead sufficient facts to state a claim of relief that is plausible on its face. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Because Defendants answered Huon's First Amended Complaint on June 1, 2012 and res judicata is an affirmative defense, a motion for judgment on the pleadings under Rule 12(c) is appropriate at this procedure posture. *See Carr v. Tillery,* 591 F.3d 909, 913 (7th Cir. 2010). In determining Rule 12(c) motions, the Court may consider the complaint, the answer, and any written instruments attached as exhibits. *See Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, Ind.,* 163 F.3d 449, 452 (7th Cir. 1998); Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). When

---

[2] On December 6, 2012, the Executive Committee reassigned this lawsuit to the Court due to the Honorable Blanche M. Manning's retirement from the bench. (R. 116.)

2

deciding whether the affirmative defense of res judicata applies under the circumstances, the

Court must necessarily look to the details of the earlier lawsuit to make any such determination.

*See Czarniecki v. City of Chicago,* 633 F.3d 545, 549 (7th Cir. 2011); *see, e.g., Carr,* 591 F.3d at

913-14.

## FACTUAL BACKGROUND

In his First Amended Complaint, Huon alleges that Johnson & Bell employed him from

December 2003 until January 9, 2008. (R. 78, First Am. Compl. ¶ 11.) Huon further asserts that

on or about January 9, 2008, Defendant Johnson, the President of Johnson & Bell, discharged

him without cause. (*Id.* ¶¶ 12, 18.) Thereafter, on July 7, 2008, Huon filed a charge of

discrimination with the Illinois Department of Human Rights ("IDHR") and the IDHR cross-

filed Huon's charge of discrimination with the United States Equal Employment Opportunity

Commission ("EEOC"). (*Id.* ¶¶ 13-14.) On September 24, 2009, Huon received his right-to-sue

letter from the EEOC. (*Id.* ¶ 15.) Huon then filed the original complaint in this federal lawsuit

on December 21, 2009. (R. 1.)

Huon, who is Asian-American, alleges that during his employment, Johnson & Bell

treated him differently than white employees because Defendants denied him the same

responsibilities, work assignments, salary and compensation, and promotional opportunities in

violation of 42 U.S.C. § 1981 and Title VII. (First Am. Compl. ¶ 24, Count I ¶¶ 58-66, Count III

¶¶ 58-68.) In particular, Huon alleges that Defendants assigned minority attorneys at Johnson &

Bell, including himself, paralegal or secretarial work that was not commensurate with their legal

experience, whereas they gave white attorneys more job responsibilities. (*Id.* ¶¶ 31, 42, 43.)

Huon specifically maintains that Defendants did not give him opportunities to do substantive

legal work, such as working on civil jury trials. (*Id*. ¶ 44.) Also, Huon asserts that Defendants

never allowed him to work independently and that they passed him up for partnership based on

his race and national origin. (*Id*. ¶¶ 44-47.) Furthermore, Huon contends that Defendants did

not give him the same annual performance evaluations as white employees, despite his

satisfactory job performance. (*Id*., Count I ¶ 62.) Huon bases his intentional interference with

prospective economic advantage against the individual Defendants on these same facts. (*Id*.,

Count II, ¶¶ 1-62.)

## PROCEDURAL BACKGROUND

On August 26, 2010, the district court granted Defendants' motion to stay based on the

abstention doctrine enunciated in *Colorado River Water Conservation Dist. v. United States,* 424

U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), reasoning that Huon's claims would be barred

by the doctrine of res judicata once the judgment in the parties' state court case became final.

Huon filed a notice of appeal on September 27, 2010, arguing that the two lawsuits at issue were

not parallel and that the district court abused its discretion because no exceptional circumstances

justified the stay. *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 499 (7th Cir. 2011). On

September 21, 2011, the Seventh Circuit vacated the district court's order and remanded this

matter for further proceedings concluding that the parties' state and federal lawsuits were not

parallel and that the district court abused its discretion by not considering whether exceptional

circumstances justified abstention under the *Colorado River* doctrine. *See Huon v. Johnson &*

*Bell, Ltd.,* 657 F.3d 641, 646-48 (7th Cir. 2011).

On remand, the district court granted Huon's motion for leave to file an amended

complaint, and thus Huon filed his First Amended Complaint on June 4, 2012. Defendants

4

answered on June 18, 2012. On September 6, 2012, Defendants filed the present Rule 12(c)

motion and on December 6, 2012, the Executive Committee reassigned this case to the Court due

to District Judge Blanche M. Manning's retirement from the bench. On March 8, 2013, the

Court directed the parties to file supplemental briefs addressing the issue of whether Huon may

split his claims under Illinois law as directed by the Seventh Circuit. *See Huon,* 657 F.3d at 647.

Defendants' Rule 12(c) motion became fully briefed on April 15, 2013.

Before filing the present lawsuit, on January 8, 2009, Huon filed a Complaint in the

Circuit Court of Cook County, Law Division, and on April 13, 2009, Huon filed a First

Amended Complaint in the state court action. In his state court First Amended Complaint, Huon

alleged defamation and intentional infliction of emotional distress ("IIED") claims against

Defendants Johnson & Bell, Beatty, and Hoyne, as well as Charles Rantis, who is not a party to

this federal lawsuit. (R. 103, Ex. C, First Am. Compl.) On July 29, 2009, the Circuit Court

Judge dismissed — with prejudice — Huon's state court defamation claims concluding that the

statements made in the context of Huon's 2007 performance evaluations were statements of

opinion. *See* 735 ILCS 5/2-615. The Circuit Court also dismissed Huon's IIED claim for

Huon's failure to sufficiently allege extreme and outrageous conduct. Huon appealed and, on

March 25, 2011, the Illinois Appellate Court affirmed the Circuit Court's dismissal. In May

2011, Huon filed a Petition for Leave to Appeal ("PLA") to the Supreme Court of Illinois. On

October 3, 2011, the Supreme Court of Illinois denied Huon's PLA.

## ANALYSIS

In their Rule 12(c) motion for judgment on the pleadings, Defendants argue that Huon's

federal First Amended Complaint is barred by the doctrine of res judicata due to the final

judgment in Huon's state court lawsuit. "Because the prior adjudication was in Illinois state court," the Court applies "Illinois res judicata principles." *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.,* 664 F.3d 1075, 1079 (7th Cir. 2011). Under Illinois law, "[r]es judicata applies if there is (1) a final judgment on the merits in an earlier action; (2) an identity of the causes of action; and (3) an identity of parties or their privies." *Ennenga v. Starns,* 677 F.3d 766, 776 (7th Cir. 2012) (citing *River Park, Inc. v. City of Highland Park,* 184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.E.2d 883, 889 (1998)). Also under Illinois law, res judicata "extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit." *River Park,* 184 Ill.2d at 302. "A determination of whether a claim is barred under the doctrine of res judicata is a question of law." *Nelson v. Chicago Park Dist.,* 408 Ill.App.3d 53, 60, 348 Ill.Dec. 865, 945 N.E.2d 634 (1st Dist. 2011).

Here, there was a final judgment on the merits in the earlier action because the state court dismissed Huon's First Amended Complaint with prejudice and under Supreme Court of Illinois Rule 273, an involuntary dismissal of an action is a final judgment on the merits. *See Wilson v. Edward Hosp.*, 367 Ill.Dec. 243, 981 N.E.2d 971, 976 (Ill. 2012); *Rein v. David A. Noyes & Co.,* 172 Ill.2d 325, 336, 216 Ill.Dec. 642, 665 N.E.2d 1199 (Ill. 1996); *see also Chicago Title Land Trust,* 664 F.3d at 1079.

Next, under the third res judicata element, namely, identity of parties or their privies, "the parties need not be identical to be considered the same." *Langone v. Schad, Diamond & Shedden, P.C.,* 406 Ill.App.3d 820, 832, 348 Ill.Dec. 65, 943 N.E.2d 673 (1st Dist. 2010). Instead, "[l]itigants are considered the same when their interests are sufficiently similar, even if they differ in name or number." *Id.*; *see also Chicago Title Land Trust,* 664 F.3d at 1080

("Privity is said to exist between parties who adequately represent the same legal interests.")

(citation omitted). Here, Johnson & Bell, Beatty, and Hoyne are Defendants in both the federal

and state lawsuits, and the remaining individual Defendants, Rantis and Johnson, are

shareholders at Johnson & Bell, representing similar, if not the same, legal interests in defending

their law firm's actions. *See State Farm Fire & Cas. Co. v. John J. Rickhoff Sheet Metal Co.,*

394 Ill.App.3d 548, 559-60, 333 Ill.Dec. 158, 914 N.E.2d 577 (1st Dist. 2009). Also, although

Johnson was not a Defendant in the state court proceedings, because he is President of Johnson

& Bell, he is in privity with Johnson & Bell for purposes of res judicata due to his position at the

firm. *See Chicago Title Land Trust,* 664 F.3d at 1080. Therefore, there is an identity of parties

or their privies as required by the third res judicata element. *See Ennega,* 677 F.3d at 776.

The Court thus turns to whether there is an identity of the causes of action under the

second res judicata element pursuant to Illinois law. As the Seventh Circuit teaches, "[f]or the

second element — identity of cause of action — Illinois courts employ a transactional test,

which provides 'the assertion of different kinds of theories of relief still constitutes a single

cause of action if a single group of operative facts give rise to the assertion of relief.'" *Hayes v.

City of Chicago,* 670 F.3d 810, 813 (7th Cir. 2012) (internal citation and citation omitted). As

the Supreme Court of Illinois explains:

> [U]nder the transactional analysis, the nature of the evidence needed to prove the
> claims at issue remains relevant for purposes of demonstrating that the claims
> arise from the same group of operative facts. Unlike the same evidence test,
> however, the transactional test permits claims to be considered part of the same
> cause of action even if there is not a substantial overlap of evidence, so long as
> they arise from the same transaction.

*River Park,* 184 Ill.2d at 311.

The Seventh Circuit's opinion in the present matter lends further guidance to the Court's analysis of whether there is an identity of the causes of action under the second res judicata element:

> Huon essentially asserts that his claims do not arise out of a single group of operative facts. Although his claims for defamation and emotional distress center on the negative performance evaluation, his federal discrimination claims (he says) encompass a much broader scope of alleged misconduct over a longer period of time, including unfavorable treatment regarding assignments, promotions, disciplinary measures, salary, and work conditions. We do not know whether Illinois would find impermissible claim-splitting in this kind of situation, in which the first case appears to rest on a subset of the facts that support the second case. This question should be explored on remand.

*Huon,* 657 F.3d at 647. In general, "[c]laim splitting is not a way around res judicata," instead, "[t]he principle that res judicata prohibits a party from later seeking relief on the basis of issues which might have been raised in the prior action also prevents a litigant from splitting a single cause of action into more than one proceeding." *Chicago Title Land Trust,* 664 F.3d at 1081 (quoting *Rein*, 665 N.E.2d at 1206).

Accordingly, under Illinois law, Huon may split his claims if he can establish that the underlying operative facts in his state court and federal actions are not a series of related transactions or the same transaction and operative facts. *See River Park,* 184 Ill.2d at 311; *Doe v. Gleicher,* 393 Ill.App.3d 31, 38, 331 Ill.Dec. 711, 911 N.E.2d 532, 540 (1st Dist. 2009). "In determining whether two complaints arose from the same transaction and operative facts, Illinois courts consider 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Hayes,* 670 F.3d at 813 (citation omitted). The Court accordingly turns to the allegations in Huon's state court and federal complaints to

determine the relationship between the factual allegations at issue. *See Cload v. West,* 328 Ill.App.3d 946, 953, 263 Ill.Dec. 35, 767 N.E.2d 486 (2d Dist. 2002).

In his state court First Amended Complaint, Huon alleges that on or about January 9, 2008, Johnson & Bell terminated his employment. (R. 103-3, Ex. C, First Am. Compl. ¶ 6.) Further, Huon asserts that he was rarely assigned any substantive legal work, such as motions for summary judgment, motions to dismiss, or responses to motions. (*Id.*, Count I ¶¶ 22, 23, Count II ¶¶ 17,18, 20, 21, Count III ¶ 18.) According to Huon, Defendants prevented him from working independently on most matters, such as defending or taking witness depositions. (*Id.*, Count I ¶ 20 Count II ¶¶ 10, 11, Count III ¶ 21.) Huon also alleges that Defendants directed him not to contact any clients without a partner's permission. (*Id.*, Count III ¶ 20.) The allegations in Huon's state court First Amended Complaint focus on the years 2006-08 and his defamation and IIED claims were based on his 2007 annual written performance reviews. (*Id.*, Count II ¶¶ 20-23, Count III ¶¶ 24, 26, 42, Count IV ¶ 17, Count V ¶¶ 46, 47.)

Accepting Huon's well-pleaded allegations as true and drawing all reasonable inferences in his favor, in his federal lawsuit, Huon alleges that Johnson & Bell employed him from December 2003 until January 9, 2008 and that on or about January 9, 2008, Defendant Johnson, the President of Johnson & Bell, discharged him without cause. Huon, who is Asian-American, alleges that during his employment, Johnson & Bell treated him differently than white employees because Defendants denied him the same responsibilities, work assignments, salary and compensation, and promotion opportunities. In particular, Huon alleges that Defendants assigned minority attorneys at Johnson & Bell, including himself, paralegal or secretarial work that was not commensurate with their legal experience, whereas Defendants gave white attorneys

more job responsibilities.  Huon specifically maintains that Defendants did give him the opportunity to do substantive legal work, such as working on civil jury trials, and contends that Defendants never allowed him to work independently.  Moreover, Huon alleges that Defendants passed him up for partnership based on his race and national origin.  Huon further contends that Defendants did not give him the same annual performance evaluations as white employees, despite his satisfactory job performance.

Reviewing Huon's allegations pragmatically, *see River Park,* 184 Ill.2d at 312, both his state and federal complaints arise from the same group of operative facts, namely, that Defendants assigned him work not commensurate with his legal experience, Defendants did not give him substantive legal work, and Defendants never allowed him to work independently.  In his state court case, Huon contends that Defendants' actions prohibited him from advancing at Johnson & Bell, thereby contributing to his poor performance reviews that were the basis of his defamation and IIED claims.  In his federal lawsuit, Defendants' conduct in denying him substantive legal work not commensurate with his legal experience serves as the basis for his discrimination and intentional interference with prospective economic advantage claims.  *See Hayes,* 670 F.3d at 813 ("assertion of different kinds of theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief.") (citation omitted).  The fact that Huon describes the types of substantive work differently in the federal and state court allegations does not undermine the conclusion that his allegations in both lawsuits are a series of related transactions.  *See Carr,* 591 F.3d at 913.  Moreover, although his state and federal complaints set forth different legal theories, these causes of action form a convenient trial unit because the same underlying conduct is at the core of both the state and

federal lawsuits.  *See Hayes*, 670 F.3d at 814; *see also 4901 Corp. v. Town of Cicero*, 220 F.3d 522, 531-32 (7th Cir. 2000).  Finally, the parties do not point to any Illinois authority that would allow Huon to split his claims because the federal claims had a broader time period and additional unfavorable treatment than the state court claims.  Indeed, the Court could not find any.

Instead, Huon argues that Defendants acquiesced to his claim splitting, and thus he may split his claims under equitable considerations.  Based on the Restatement (Second) of Judgments § 26(d), the Supreme Court of Illinois has set forth six scenarios where the application of res judicata is inequitable:

> (1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action; (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason.

*See Hayes*, 670 F.3d at 815 (quoting *Rein*, 665 N.E.2d at 1207).

Here, Huon specifically argues that Defendants acquiesced to his claim splitting because they moved to strike portions of Huon's complaint as immaterial to his defamation and IIED claims pursuant to 755 ILCS 5/2-615.  (R. 131-6, Mot. Strike, at 12-13.)  These allegations concerned Defendants failing to assign Huon substantive legal work and that Defendants terminated him based on his race and national origin.  (*Id.*)  Some of Huon's statements concerning discrimination were made in support of his argument that Defendants' conduct was extreme and outrageous to support his IIED claim.  Based on Defendants' motion to strike, Huon

asserts that "Defendants' position implied that Mr. Huon was not without remedy for his race discrimination claims and acquiesced in claim splitting." (R. 131, Pl.'s Supp. Brief, at 6.) Huon's argument is a misplaced because the record does not indicate that Defendants argued that Huon could not present his discrimination claims in state court, but instead, Defendants maintained that Huon's statements regarding discrimination did not support his defamation and IIED claims. *See Piagentini v. Ford Motor Co.*, 387 Ill.App.3d 887, 897, 327 Ill.Dec. 253, 901 N.E.2d 986 (1st Dist. 2009) ("the key element in determining acquiescence is the failure of the defendant to object to the claim-splitting"). In other words, Defendants' conduct in state court did not indicate that they acquiesced and intended for Huon to file discrimination claims at a later date. *See Matejczyk v. City of Chicago*, 397 Ill.App.3d 1, 10, 337 Ill.Dec. 166, 922 N.E.2d 24 (1st Dist. 2009).

Similarly, Huon argues that judicial estoppel bars Defendants from bringing the present motion. "The doctrine of judicial estoppel prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter." *Wells v. Coker,* 707 F.3d 756, 760 (7th Cir. 2013). Courts typically examine three factors in determining whether a party is judicially estopped: (1) "whether the party's positions in the two litigations are clearly inconsistent;" (2) "whether the party successfully persuaded a court to accept its earlier position;" and (3) "whether the party would derive an unfair advantage if not judicially estopped." *Id.* (citing *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)); *see also In re Knight-Celotex, LLC,* 695 F.3d 714, 721-22 (7th Cir. 2012).

12

As discussed, Defendants did not argue that Huon could not bring his Title VII and Section 1981 discrimination claims in state court. Instead, Defendants argued that Huon's allegations in his First Amended Complaint based on discrimination did not support his defamation and IIED claims in the context of a motion to strike. Therefore, Defendants' positions in state and federal court are not clearly inconsistent. *See Wells,* 707 F.3d at 760. Moreover, the Circuit Court Judge did not grant Defendants' motion to strike, therefore, Defendants' argument was not successful under the second judicial estoppel factor. *See Kimbrell v. Brown,* 651 F.3d 752, 757 (7th Cir. 2011); *see also Huon,* 657 F.3d at 647. Accordingly, Huon's judicial estoppel argument is without merit.

Further, Huon contends that res judicata does not apply under the circumstances because he did not have a full and fair opportunity to litigate his claims in the earlier lawsuit due to the state court's failure to consider his discrimination allegations. Huon's allegations in his First Amended Complaint, however, merely referenced Defendants' discrimination. He never brought actual race and national origin discrimination claims in his state court complaint, although it was his burden to amend his complaint so that his entire action was in one lawsuit. *See Chicago Title Land Trust,* 664 F.3d at 1081 ("It was plaintiffs' burden to amend or dismiss their complaints as necessary to get their entire cause of action in one suit"). Also, although Huon did not receive his EEOC right-to-sue letter until September 24, 2009, Huon filed his EEOC charge on or about July 7, 2008, therefore, he could have requested the state trial court to postpone or stay his lawsuit until he received his right-to-sue letter. *See Groesch v. City of Springfield, Ill.*, 635 F.3d 1020, 1030 (7th Cir. 2011); *Huon,* 657 F.3d at 648 (citing 735 ILCS 5/2–609).

Likewise, Huon maintains that he could not bring his Title VII allegations in the state court action because the Supreme Court of Illinois did not decide that Illinois courts had concurrent jurisdiction to hear Title VII claims until after he filed his state court complaint on January 8, 2009. Huon's argument is misplaced because it is well-established that Congress did not give federal courts exclusive jurisdiction over Title VII claims. *See Yellow Freight Sys. Inc. v. Donnelly,* 494 U.S. 820, 821, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990). Indeed, as the Seventh Circuit explained in *Huon*, "Illinois circuit courts have concurrent jurisdiction over claims arising under Title VII and § 1981." *Huon,* 657 F.3d at 648. Further, Huon's argument based on *Geise v. Phoenix Co. of Chicago,* 159 Ill.2d 507, 515–19, 203 Ill.Dec. 454, 639 N.E.2d 1273 (Ill. 1994), is unavailing because *Geise* stands for the proposition that plaintiffs must file their civil rights actions brought pursuant to the Illinois Human Rights Act with the IDHR before filing a civil lawsuit.

In sum, any equitable considerations actually weigh against Huon's argument that claim-splitting is appropriate under the circumstances because the policy behind res judicata is to conserve judicial resources by preventing repetitive litigation and to protect parties from bearing the unjust burden of re-litigating the same case. *See Chicago Title Land Trust,* 664 F.3d at 1081; *Matrix IV, Inc. v. American Nat'l Bank & Trust Co.,* 649 F.3d 539, 547 (7th Cir. 2011); *see also Gleicher,* 393 Ill.App.3d at 39. The Court therefore grants Defendants' Rule 12(c) motion for judgment on the pleadings.

14

**CONCLUSION**

For these reasons, the Court grants Defendants' motion for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) and dismisses this lawsuit in its entirety.

**Dated:** May 13, 2013

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**